**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**
www.flmb.uscourts.gov

In re:                                    Case No.: 6:24-bk-02620-LVV
                                          Chapter 11
**ONE FAT FROG, INCORPORATED,**          Sub Chapter V
                                          EIN: 42-1668173

      Debtor.
_____/

**PLAN OF LIQUIDATION**
**SUBMITTED BY ONE FAT FROG, INCORPORATED**

**COUNSEL FOR DEBTOR**

Jeffrey S. Ainsworth, Esquire
Florida Bar No.: 0060769
E-mail: *jeff@bransonlaw.com*
Cole B. Branson, Esquire
Florida Bar No.: 1049610
E-mail: *cole@bransonlaw.com*
**BransonLaw, PLLC**
1501 East Concord Street
Orlando, Florida 32803
Telephone: (407) 894-6834
Facsimile: (407) 894-8559

**August 22, 2024**

1

## <u>INTRODUCTION</u>

**ONE FAT FROG, INCORPORATED** proposes the following plan of liquidation (the "**Plan**") pursuant to subchapter V of chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"). Capitalized terms used in the Plan and not otherwise defined have the meanings ascribed to such terms in Article I of the Plan. Debtor, ONE FAT FROG, INCORPORATED, is the proponent of the Plan (the "**Plan Proponent**") within the meaning of section 1129 of the Bankruptcy Code. Debtor's Counsel has closely collaborated with the Subchapter V Trustee, L. Todd Budgen ("Trustee in Possession" or "TIP"), who, pursuant to the Court's Order transferring control and management of the Debtor to the Subchapter V Trustee (Doc. No. 71), has overseen the development of the terms set forth in this Chapter 11 Plan, with both parties in full agreement regarding the provisions outlined herein.

This Plan provides for:  5 classes of secured claims; 1 class of unsecured claims; and 1 class of equity security holders.

**SUBJECT TO CERTAIN RESTRICTIONS AND REQUIREMENTS SET FORTH IN SECTION 1193 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 3019, THE PLAN PROPONENT RESERVES THE RIGHT TO ALTER, AMEND, MODIFY, REVOKE, OR WITHDRAW THE PLAN PRIOR TO ITS SUBSTANTIAL CONSUMMATION.**

### A. <u>DESCRIPTION AND A BRIEF HISTORY OF THE BUSINESS OPERATIONS OF THE DEBTOR</u>

The Debtor is a Florida Profit Corporation created by Articles of Incorporation filed with the Florida Secretary of State on or around May 6, 2005. The Debtor was the nation's largest food truck manufacturer and is based in Orlando, Florida. The Debtor's principal place of business is located at 1801 Boice Pond Road, Bldg 100, Ste 101, Orlando, FL 32837.

### B. <u>Liquidation Analysis</u>

This is a liquidating plan, so a liquidation analysis is not necessary or appropriate, since creditors are receiving under this Plan what they would receive in a hypothetical Chapter 7 case, albeit with less administrative expenses.

### C. <u>Projections with Respect to the Ability to Make Payments under the Plan</u>

This is a liquidating plan, so plan projections are not necessary or appropriate.

**YOUR RIGHTS MAY BE AFFECTED. YOU SHOULD READ THE PLAN CAREFULLY AND DISCUSS IT WITH YOUR ATTORNEY AND ACCOUNTANT OR OTHER FINANCIAL ADVISOR IF YOU HAVE ANY QUESTIONS. IF YOU DO NOT HAVE AN ATTORNEY, YOU MAY WISH TO CONSULT ONE**

## ARTICLE I – DEFINITIONS – INTERPRETATION

### A.    Definitions

For purposes of this Plan, the following definitions shall apply unless the context clearly requires otherwise:

**Administrative Claim** shall mean any Claim for the payment of an Administrative Expense.

**Administrative Expense** shall mean any cost or expense of administration of the Chapter 11 Case that is allowed under §§ 503(b) or 507(a)(2) of the Bankruptcy Code, to the extent the party claiming any such cost or expense files an application, request, or motion seeking such cost or expense in the Chapter 11 Case on or before the applicable Administrative Claims Bar Date, including (i) any actual and necessary costs and expenses of preserving the estate or operating the business of the Debtor (including wages, salaries, or commissions for services rendered) incurred after the Petition Date, (ii) any post-petition cost, indebtedness or contractual obligation duly and validly incurred or assumed by the Debtor in the ordinary course of its business, (iii) any claim granted administrative priority status by a Final Order of the Bankruptcy Court, and (iv) compensation or reimbursement of expenses of professionals awarded or Allowed pursuant to an order of the Bankruptcy Court under §330(a) or 331 of the Bankruptcy Code, 28 U.S.C. §§ 1911-30; and (v) any and all other costs or expenses of administration of the Chapter 11 Case that are Allowed by a Final Order of the Bankruptcy Court; provided, however, that notwithstanding anything to the contrary contained herein, when used in the Plan, the term "Administrative Expense" shall not include any Priority Tax Claim, any transferred claim, any Disallowed Claim, or unless otherwise expressly provided in the Plan, any of the Claims in Classes 1 through 7.

**Allowed** when used with respect to a Claim or Interest, shall mean a Claim or Interest (a) proof of which was filed with the Bankruptcy Court on or before the Bar Date, and (i) as to which no objection has been filed by the Objection Deadline, unless such Claim or Interest is to be determined in a forum other than the Bankruptcy Court, in which case such Claim or Interest shall not become allowed until determined by Final Order of such other forum and Allowed by Final Order of the Bankruptcy Court; or (ii) as to which an objection was filed by the Objection Deadline, to the extent Allowed by a Final Order; (b) Allowed by a Final Order; or (c) listed in the Debtor's schedules filed in connection with this Chapter 11 Case and not identified as contingent, unliquidated, or disputed.

**Allowed Administrative Claim** shall mean all or that portion of any Administrative Claim which has been or becomes allowed by Order of the Bankruptcy Court.

**Allowed Amount** shall mean the amount of an Allowed Claim.

**Allowed Priority Tax Claim** shall mean a Priority Claim pursuant to U.S.C. § 507(a)(8), to the extent such Priority Claim is or becomes an Allowed Claim.

**Allowed Secured Claim** shall mean a Secured Claim to the extent provided under § 506 of the Bankruptcy Code and to the extent that neither the Lien underlying the Claim is challenged nor the amount of the Claim is challenged as provided for herein.

**Bankruptcy Code** shall mean 11 U.S.C. §101 *et seq*., and any amendments thereto.

**Bankruptcy Court** shall mean the United States Bankruptcy Court for the Middle District of Florida, Orlando Division, and any Bankruptcy Court having competent jurisdiction to hear appeals or *certiorari* proceedings therefrom.

**Bankruptcy Rules** shall mean the Federal Rules of Bankruptcy Procedure ("Fed. R. Bankr. P."), as amended, and as supplemented by the Local Rules of Practice and Procedure of the Bankruptcy Court, as amended ("The Local Rules").

**Bar Date** shall mean either August 2, 2024, for non-governmental units or 180 days from the Petition Date, for governmental units, the dates fixed by order of the Bankruptcy Court by which proofs of Claim or Interest must be filed against the Debtor.

**Business Day** shall mean any day except Saturday, Sunday, or any legal holiday.

**Cash** shall mean cash or cash equivalents, including, but not limited to, checks, bank deposits or other similar items.

**Causes of Action** shall mean the following actions and causes of action and the proceeds thereof, whether or not commenced as of the date hereof, all of which shall be vested in the Debtor: (a) all proceedings, commenced or to be commenced pursuant to Bankruptcy Code § 502 and §§ 544-551 (or equivalent provisions of applicable non-bankruptcy law); and (b) all claims against Creditors or Holders of Interests, parties having dealings, relationships, or transactions with or related to the Debtor, and any party named or identified in the Debtor's schedules, statement of financial affairs, or any pleadings filed in this Chapter 11 case; and (c) the Debtor's right of setoff, recoupment, contribution, reimbursement, subrogation, or indemnity and any other indirect claim of any kind whatsoever.

**Chapter 11 Case** shall mean the Chapter 11 reorganization case of the Debtor pending in the Bankruptcy Court, specifically 6:24-bk-02620-LVV, under the caption *In re One Fat Frog, Incorporated*

**Claims Objection Bar Date** shall mean the date by which objections to Claims and Interests must be filed with the Bankruptcy Court; to wit, 60 days after the Confirmation Date, unless otherwise extended by the Bankruptcy Court.

**Class** shall mean a group of Claims or Interests substantially similar to each other as classified under this Plan.

**Class 1 Claim, Class 2 Claim, Class 3 Claim**, *etc.* shall mean the specific Class into which Claims or Interests are classified pursuant to Article II of the Plan.

**Code** shall mean the United States Bankruptcy Code, 11 U.S.C. § 101, *et seq.*, and any amendments thereto.

**Confirmation** shall mean the process leading to and including the entry of the Confirmation Order pursuant to § 1191 of the Code.

**Confirmation Date** shall mean the date the Confirmation Order becomes final and non-appealable.

**Confirmation Hearing** shall mean the hearing set by the Bankruptcy Court for the hearing on confirmation of the Debtor's Plan.

**Confirmation Order** shall mean the order entered by the Bankruptcy Court confirming the Plan.

**Consensual Plan** shall mean a plan as to which each Class of Claims has voted to accept the plan. Whether a Class of Claims has voted to accept a plan shall be determined in accordance with Section 1126 of the Bankruptcy Code (requiring at least two-thirds in amount and at least half in number of the Allowed Claims in such Class).

**Debtor** shall mean ONE FAT FROG, INCORPORATED

**Disallowed** when used with respect to a Claim or Interest, shall mean a Claim or Interest to the extent fourteen (14) days have expired since the Claim or Interest was disallowed by order of the Bankruptcy Court, unless proper application for a stay of such order has been made within such fourteen (14) day period and granted, in which case the Claim or Interest shall be disallowed thirty (30) days after entry of the order disallowing such Claim or Interest, unless prior to the expiration of such period, a stay is obtained with respect to the order disallowing the Claim or Interest.

**Disposable Income** shall mean the income that is received by the Debtor and that is not reasonably necessary to be expended for the payment of expenditures necessary for the continuation, preservation, or operation of the business of the Debtor.

**Disputed Claim** shall mean any Claim other than a Disallowed Claim that has not been Allowed by an order of the Bankruptcy Court and as to which (a) a Proof of Claim has been filed with the Bankruptcy Court or is deemed filed under applicable law or order of the Bankruptcy Court, and (b) an objection has been or may be timely filed or deemed filed under applicable law and any such objection has not been: (i) withdrawn; (ii) overruled or denied by an order of the Bankruptcy Court; or (iii) granted by an order of the Bankruptcy Court. In addition to the foregoing, a Disputed Claim shall also mean a Claim that has not been Allowed by an order of the Bankruptcy Court, whether or not an objection has been or may be timely filed, if (a) the amount of Claim specified in the Proof of Claim exceeds the amount of any corresponding

Claim scheduled in the Debtor's schedules, (b) the classification of the Claim specified in the Proof of Claim differs from the classification of any corresponding Claim scheduled in the Debtor's schedules or set forth in the Plan, (c) any corresponding Claim has been scheduled in the Debtor's schedules as disputed, contingent, or unliquidated, (d) no corresponding Claim has been scheduled in the Debtor's schedules, or (e) such claim is reflected as unliquidated or contingent in the Proof of Claim filed with respect thereof. To the extent an objection relates to the allowance of only a part of the Claim, such Claim shall be a Disputed Claim only to the extent of the objection. To the extent that the amount of the Claim specified in the Proof of Claim exceeds the amount of any corresponding Claim scheduled in the Debtor's schedules, such Claim shall be a Disputed Claim only to the extent of the amount specified in the Proof of Claim which is in excess of the amount of the Claim as scheduled.

**Distribution** shall mean the Distribution to the holders of Allowed Claims.

**Distribution Date** when used with respect to each Claim or Interest shall mean the date on which distributions to the Holder of the Claim will be made in accordance with the Plan.

**Effective Date** shall mean the first business day following the date that is 14 days after the entry of the confirmation order. If, however, a stay of the confirmation order is in effect on that date, the effective date will be the first business day after the date on which the stay expires or is otherwise terminated.

**Equity Interest** shall mean the interests in the Debtor held by Holders of existing common stock, including any and all options, warrants, or similar instruments for the acquisition of shares of existing common stock of the Debtor.

**Final Order** shall mean (a) an order, judgment, ruling or other decree issued and entered by the Bankruptcy Court or by any state or other federal court as may have jurisdiction over any proceeding in connection with the Chapter 11 Case for the purpose of such proceeding, which order, judgment, ruling or other decree has not been reversed, vacated, stayed, modified or amended and to which (i) no appeal or petition for review, re-argument, rehearing, reconsideration or *certiorari* has been taken and is pending and the time for filing such appeal or petition for review, re-argument, rehearing, reconsideration or *certiorari* has expired, or (ii) such appeal or petition has been heard and dismissed or resolved and the time to further appeal or petition has expired with no further appeal or petition pending; (b) a stipulation or other agreement entered into which has the effect of any such aforesaid order, judgment, ruling or other decree with like finality.

**Fiscal Year** shall mean the fiscal year of the Debtor, which commences on the first day of January and concludes on the final day of December in that same calendar year.

**Ford** shall mean Ford Motor Credit Company, LLC.

**Ford Collateral (0370)** shall mean the 2023 Ford Maverick Crew Cab XLT 2.0L I4 Turbo, VIN:3FTTW8E94PRA00370.

**Ford Collateral (6003)** shall mean the 2023 Ford Super Duty F-350 DRW, VIN: 1FT8W3DT4PEC16003.

**Ford Collateral (7952)** shall mean the 2022 Ford Commercial F-350 Super Duty F350 Chassis & Crew Cab VIN:1FD8W3HT6NEC47952

**Governmental Authority** shall mean any agency, board, executive, court, commission, department, legislature, tribunal, instrumentality or administration of the United States, a foreign country or the State of Florida or any other State, provincial, territorial, municipal, local or other governmental entity in the United States or the Public Utilities Commission of any State or a foreign country.

**Holder** shall mean (a) as to any Claim, (i) the owner or holder of such Claim as such is reflected on the Proof of Claim filed with respect to such Claim, or (ii) if no Proof of Claim has been filed with respect to such Claim, the owner or holder of such Claim as shown on the schedules or books and records of the Debtor or as otherwise determined by order of the Bankruptcy Court, or (iii) if the owner or holder of such Claim has transferred the Claim to a third party and advised the Debtor or the Liquidating Debtor in writing of such transfer and provided sufficient written evidence of such transfer, the transferee; and (b) as to any Equity Interest, the record owner or holder of such Equity Interest as shown on the stock register maintained by the Debtor or the Transfer Agent or as otherwise determined by the Bankruptcy Court.

**Impaired** shall mean, when used with reference to a Claim or Equity Interest, a Claim or Equity Interest that is impaired within the meaning of § 1124 of the Bankruptcy Code.

**Interest** shall mean an issued or authorized outstanding share or shares of common stock, a warrant or warrants for the issuance of such share or shares, other stock, stock equivalents, limited partnership interest, or other equity instruments in the Debtor.

**Liabilities** shall mean any and all liabilities, obligations, judgments, damages, charges, costs, Debts, and indebtedness of any and every kind and nature whatsoever, whether heretofore, now or hereafter owing, arising, due, payable, direct or indirect, absolute or contingent, liquidated or unliquidated, known or unknown, foreseen and unforeseen, in law, equity or otherwise, of or relating to the Debtor or any affiliate, subsidiary, predecessor, successor or assign thereof, or otherwise based in whole or in part upon any act or omission, transaction, event or other occurrence taking place prior to the Effective Date in any way relating to the Debtor or any affiliate, subsidiary, predecessor, successor or assign thereof, of any assets of the Debtor, the business or operations of the Debtor, the Chapter 11 Case, or the Plan, including any liabilities, obligations, judgments, damages, charges, costs, Debts, and indebtedness based in whole or in part upon any Claim of or relating to successor liability, transferee liability, or other similar theory.

**Lien** shall mean any mortgage, lien, charge, security interest, encumbrance, or other security device of any kind affecting any asset or property of the Debtor but only to the

extent that such interest is recognized as valid by a court of competent jurisdiction if the validity or scope of such interest is challenged by the Debtor or any other party with standing to bring such a challenge.

**Liquidating Debtor** shall mean ONE FAT FROG, INCORPORATED post confirmation.

**Liquidating Trust** shall mean the Liquidating Trust created for the benefit of creditors and to be governed according to the terms of the Plan.

**Liquidating Trustee in Possession** shall mean L. Todd Budgen, the Subchapter V Trustee for the bankruptcy estate in this Chapter 11 Case, who has been granted control and management of the Debtor pursuant to the Honorable Court's order entered on July 12, 2024 (Doc. No. 71). The Trustee in Possession has filed a Motion to Sell (Doc. 150) and seeks Entry of an Order (I) Authorizing Debtor to Schedule an Auction Sale of Equipment Located at Debtor's Premise Free and Clear of All Liens, Encumbrances, Claims and Interests, (II) Approving Payment of Costs Associated with Sale, Including Auctioneer, and (III) Granting Certain Related Relief. The Liquidating Trustee in Possession will be a fiduciary to the estate and its unsecured creditors (and the Liquidating Trust and its beneficiaries) having the full power and authority to administer all Claims against the estate and pursue any causes of action for the benefit of creditors.

**Motion to Sell** means the Subchapter V Trustee's Expedited Motion for Entry of an Order (I) Authorizing Debtor to Schedule an Auction Sale of Equipment Located at Debtor's Premise Free and Clear of All Liens, Encumbrances, Claims and Interests, (II) Approving Payment of Costs Associated with Sale, Including Auctioneer, and (III) Granting Certain Related Relief (Doc. 150), filed August 14, 2024.

**Newtek** shall mean Newtek Small Business Finance, LLC

**Newtek Collateral** shall mean all personal property of the Debtor, including all tangible and intangible property, cash, accounts receivables, inventory, furniture, and equipment as set forth in a UCC Financing Statement (202203420827) filed on October 25, 2022.

**Nonconsensual Plan** shall mean a plan that meets all applicable requirements in § 1129(a) of the Bankruptcy Code are met, except for those in paragraphs (8), (10), and (15), and at least one Class of Claims has submitted ballots voting to reject the plan, as determined in accordance with Section 1126 of the Bankruptcy Code.

**Objection Deadline** shall mean the date by which objections to Claims and Interests must be filed with the Bankruptcy Court; to wit, 60 days after the Confirmation Date, unless otherwise extended by the Bankruptcy Court.

**Order** shall mean a determination, decree, adjudication, or judgment issued or entered by the Bankruptcy Court.

**Payment** shall mean the Cash to be paid under the Plan to the holders of Allowed Claims.

**Petition Date** shall mean May 24, 2024, the date on which the petition for relief was filed in the Debtor's Chapter 11 Case.

**Plan** shall mean this chapter 11 Plan of Liquidation, as amended in accordance with the terms hereof or modified in accordance with the Bankruptcy Code.

**Plan Payment** shall mean payments made by the Liquidating Debtor pursuant to the terms of the Plan.

**Prepetition** shall mean the period of time preceding the Petition Date and concluding on the Petition Date.

**Priority Non-Tax Claim** shall mean a Claim entitled to priority pursuant to §§507(a)(3), 507(a)(4), 507(a)(5) or 507(a)(6) of the Bankruptcy Code.

**Priority Tax Claim** shall mean a Claim entitled to priority pursuant to §507(a)(8) of the Bankruptcy Code.

**Professional** shall mean (i) any professional retained in the Chapter 11 Case pursuant to an order of the Bankruptcy Court in accordance with §§ 327 or 1103 of the Bankruptcy Code; (ii) any attorney or accountant seeking compensation or reimbursement of expenses pursuant to § 503(b) of the Bankruptcy Code; and (iii) any entity whose fees and expenses are subject to approval by the Bankruptcy Court as reasonable pursuant to §1129(a)(4) of the Bankruptcy Code.

**Rule or Rules** shall mean the Federal Rules of Bankruptcy Procedure, as supplemented by the Local Bankruptcy Rules as adopted by the Bankruptcy Court.

**Sale Proceeds** shall mean the proceeds, if any, from the sale conducted pursuant to this Plan.

**Secured Claim** shall mean a Claim secured by a Lien which is perfected and enforceable under applicable law, and which is not subject to avoidance under the Code or other applicable nonbankruptcy law. A Secured Claim which is challenged by the Debtor shall only be Allowed to the extent that such claim is deemed to be Allowed in the Plan or the underlying security interest is recognized as valid by the Bankruptcy Court and the difference in amount between such a Creditors Allowed Claim and its Allowed Secured Claim shall be an Allowed Unsecured Claim.

**Security Interest** shall mean "security interest" as defined in § 101(51) of the Code.

**Substantial Consummation** shall be when distribution commences under the Plan.

**TD** shall mean the TD Bank, N.A.

**TD Collateral** shall mean the 2022 Porsche Cayenne VIN: WP1AA2AY5NDA02844.

**Trustee** means the trustee to be appointed in this case pursuant to 11 U.S.C. § 1183 (a).

**Trustee-in-Possession** shall mean L. Todd Budgen, the Subchapter V Trustee for the bankruptcy estate in this Chapter 11 Case, who has been granted control and management of the Debtor pursuant to the Honorable Court's order entered on July 12, 2024 (Doc. No. 71).

**Unimpaired Claim** shall mean a Claim that is not impaired within the meaning of §1124 of the Bankruptcy Code.

**United States Trustee** shall have the same meaning ascribed to it in 28 U.S.C. § 581, *et seq.* and, as used in the Plan, refers to the office of the United States Trustee for Region 21, located in the Middle District of Florida, Orlando, Florida.

**Unsecured Claim** shall mean a Claim other than an Administrative Expense, a Priority Non-Tax Claim, a Priority Tax Claim, a Secured Claim, or an Equity Interest.

**B.    <u>Bankruptcy Code Definitions</u>**
Definitions in the Bankruptcy Code and Bankruptcy Rules shall be applicable to the Plan unless otherwise defined in the Plan. The rules of construction in Bankruptcy Code §102 shall apply to the Plan.

**C.    <u>Undefined Terms</u>**
A term used in the Plan and not defined herein has the meaning ascribed to such term in the Bankruptcy Code or Rules.

**D.    <u>Interpretation</u>**
Unless otherwise specified, all sections, articles and exhibits referenced in the Plan are to the respective sections in, articles of, or exhibits to, the Plan, as the same may be amended, waived, or modified from time to time. The headings in the Plan are for convenience of reference only and shall not limit or otherwise affect the provisions hereof. Words denoting the singular number shall include the plural number and vice versa, and words denoting one gender shall include the other gender. As to contested matters, adversary proceedings, and other actions or threatened actions, this Plan shall not be construed as a stipulation or admission, but rather, as a statement made in settlement negotiations. Any capitalized term used in the Plan that is not defined in the Plan but that is defined in the Bankruptcy Code or in the Bankruptcy Rules, as the case may be, the Bankruptcy Code or the Bankruptcy Rules definition will be controlling in the case of a conflict or ambiguity.

## ARTICLE II – CLASSIFICATION OF CLAIMS AND INTERESTS

### A.    General Rules of Classification

Generally, a Claim or Interest is classified in a particular Class only to the extent the Claim or Interest qualifies within the description of the Class and is classified in another Class or Classes to the extent any remainder of the Claim qualifies within the description of such other Class. If a Claim qualifies for inclusion in a more specifically defined Class, then the Claim shall be included only in the more specifically defined Class. Notwithstanding anything contained herein to the contrary, if a Claim is not allowed, then the Debtor is not bound by a classification made or implied herein.

### B.    Classifications

All Claims and Interests treated under Articles III - V of the Plan are divided into the following classes, which shall be mutually exclusive:

#### Class 1 – Ford Secured Claim (6003)

Class 1 consists of the secured claim of Ford. This claim is secured by a lien on the Ford Collateral (6003), specifically, the 2023 Ford Super Duty F-350 DRW, VIN: 1FT8W3DT4PEC16003. The Ford secured claim is approximately $13,923.32 (per Proof of Claim 112). This Class is Impaired.

#### Class 2 – Newtek Secured Claim

Class 2 consists of the secured claim of Newtek. This claim is secured by Newtek's Collateral. The Newtek secured claim is approximately $2,122,684.74 (per Proof of Claim 11).  This Class is Impaired.

#### Class 3 – TD Secured Claim

Class 3 consists of the secured claim of TD. This claim is secured by TD's Collateral. The TD secured claim is approximately $84,600.00. This Class is Impaired.

#### Class 4 – Ford Secured Claim (0370)

Class 4 consists of the secured claim of Ford. This claim is secured by a lien on the Ford Collateral (0370), specifically, the 2023 Ford Maverick Crew Cab XLT 2.0L I4 Turbo, VIN:3FTTW8E94PRA00370. The Ford secured claim is approximately $44,060.89 (per Proof of Claim 22). This Class is Impaired.

#### Class 5 – Ford Secured Claim (7952)

Class 5 consists of the secured claim of Ford. This claim is secured by a lien on the Ford Collateral (7952), specifically, the 2022 Ford Commercial F-350 Super Duty F350 Chassis & Crew Cab VIN:1FD8W3HT6NEC47952. The Ford secured claim is approximately $44,060.89 (per Proof of Claim 111). This Class is Impaired.

#### Class 6 - General Unsecured Claims

Class 6 consists of the Allowed Unsecured Claims against the Debtor. This Class is Impaired.

Class 7 – One Fat Frog, Incorporated Equity

Class 7 consists of any and all equity interests and warrants currently issued or authorized in the Debtor. This Class is Impaired.

## ARTICLE III – ADMINISTRATIVE EXPENSES

### A.    Administrative Claims

a.    Any person, including any professional, including the Subchapter V Trustee, who has rendered services to the Debtor during the course of this Case, that asserts an Administrative Claim arising before the Confirmation Date, including Claims under § 503(b) of the Code, shall, on or before the Administrative Claims Bar date or other date as set by Bankruptcy Court order, file an application, motion, or request, as called for by the Rules, with the Bankruptcy Court for allowance of such Claim as an Administrative Claim specifying the amount of any basis for such Claim; provided, however, that applicants who have previously filed applications, motions, or requests with the Bankruptcy Court need not file another such paper for the same Claim. Failure to timely file an application, motion, or request for allowance pursuant to this Section by any holder of an Administrative Expense Claim shall bar such claimant from seeking recovery on such Claim.

b.    Each holder of a an Administrative Claim of the Debtor shall be paid by the Debtor one hundred percent (100%) of its Allowed Claim in Cash, if available, unless otherwise ordered by the Bankruptcy Court or agreed to by such Holder, on or before the Effective Date or such later date as may be agreed to by such holder, or, if the Claim does not become Allowed prior to the Effective Date, on the date the Allowed Amount of such claim is determined by Final Order of the Bankruptcy Court. Debtor's cash on hand as of the Effective Date shall be first used to pay Administrative Claims. However, nothing in this provision of the Plan shall preclude the Debtor from paying any holder of a Administrative Claim less than one hundred percent (100%) of its Allowed Claim in Cash on the Effective Date, provided that such Claim holder consents to different payment terms.

## ARTICLE IV – TREATMENT OF UNIMPAIRED CLASSES

There are no Unimpaired Classes of Claims and Interests.

## ARTICLE V – TREATMENT OF IMPAIRED CLASSES OF CLAIMS

### A.    Determination of Allowed Amounts

Treatment prescribed for Claims and Interests in the following sections of Article V shall in all events refer exclusively to the Allowed Amount of each respective Claim. In the event the Allowed Amount of any Claim is not determined by agreement or otherwise prior to the date on which the Plan provides for a Distribution to be made on account of such Claim, then no Distribution on account of such Claim shall be made until the Claim becomes an Allowed Claim. Notwithstanding Confirmation of the Plan, the Debtor reserves the right to object to any

Claim (other than Claims deemed in the Plan to be Allowed Claims) for any reason authorized by applicable bankruptcy and nonbankruptcy law, as well as the right to assert that any such Claim includes amounts subject to equitable subordination or other relief, equitable or otherwise. The Liquidating Debtor or Liquidating Trustee in Possession will be responsible for all Claim objections, and all such objections will be filed on or before the Claims Objection Bar Date. Entry of the Confirmation Order shall be deemed to be recognition that the Bankruptcy Court expressly retains jurisdiction to adjudicate any objections to Claims filed on or before the Claims Objection Bar Date.

#### B. **Impairment/Classification Controversies**

If there is a controversy regarding the classification or impairment of a Claim or Interest, then such controversy shall be determined by the Bankruptcy Court after notice and a hearing.

#### **Class 1 – Ford Secured Claim (6003)**

Class 1 consists of the secured claim of Ford. This claim is secured by a lien on the Ford Collateral (6003), specifically, the 2023 Ford Super Duty F-350 DRW, VIN: 1FT8W3DT4PEC16003. The Ford Secured Claim is approximately $13,923.32.

The Liquidating Trustee in Possession will use his business judgment to liquidate and sell all assets of the estate; and the proceeds from the Ford Collateral (if any) shall be used to pay the Ford Secured Claim in full; and if the proceeds from such sale are insufficient to pay Ford in full, then the balance of Ford's claim shall be treated as a general unsecured claim under Class 6 in accordance with 11 U.S.C. § 506.

#### **Class 2 – Newtek Secured Claim**

Class 2 consists of the secured claim of Newtek. This claim is secured by a lien on the Newtek Collateral. The Newtek Secured Claim is approximately $2,122,684.74.

The Liquidating Trustee in Possession will use his business judgment to liquidate and sell all assets of the estate; and the proceeds from the sale shall be used to pay the Newtek Secured Claim in full; and if the proceeds from such sale are insufficient to pay Newtek in full, then the balance of Newtek's claim shall be an Allowed Unsecured Claim.

#### **Class 3 – TD Auto Finance Claim**

Class 3 consists of the secured claim of TD. This claim is secured by TD's Collateral. The TD secured claim is approximately $84,600.00. This Class is Impaired.

The Liquidating Trustee in Possession will surrender the TD Collateral to TD as the indubitable equivalent of the TD Secured Claim.

#### **Class 4 – Ford Secured Claim (0370)**

Class 4 consists of the secured claim of Ford. This claim is secured by a lien on the Ford Collateral (0370), specifically, the 2023 Ford Maverick Crew Cab XLT 2.0L I4 Turbo, VIN:3FTTW8E94PRA00370. The Ford secured claim is approximately $44,060.89 (per Proof of Claim 22). This Class is Impaired.

The Liquidating Trustee in Possession will surrender the Ford Collateral (0370) to Ford as the indubitable equivalent of the Ford Secured Claim (0370).

#### **Class 5 – Ford Secured Claim (7952)**

Class 5 consists of the secured claim of Ford. This claim is secured by a lien on the Ford Collateral (7952), specifically, the 2022 Ford Commercial F-350 Super Duty F350 Chassis & Crew Cab VIN:1FD8W3HT6NEC47952. The Ford secured claim is approximately $44,060.89 (per Proof of Claim 111). This Class is Impaired.

The Liquidating Trustee in Possession will use his business judgment to liquidate and sell all assets of the estate; and the proceeds from the Ford Collateral (if any) shall be used to pay the Ford Secured Claim in full; and if the proceeds from such sale are insufficient to pay Ford in full, then the balance of Ford's claim shall be treated as a general unsecured claim under Class 6 in accordance with 11 U.S.C. § 506.

### Class 6 – General Unsecured Claims

Class 6 consists of the Allowed Unsecured Claims against the Debtor. This Class is Impaired.

Class 6 consists of all Allowed General Unsecured Claims. Class 6 will include all deficiency claims. In full satisfaction of the Allowed Class 6 Claims, holders of such claims shall receive a *pro rata* distribution of the Causes of Action, net of expenses, as more fully discussed herein. Upon the Effective Date, all Causes of Action will be deemed transferred into the Liquidating Trust.

### Class 7 – One Fat Frog, Incorporated  Equity

Class 7 consists of any and all equity interests and warrants currently issued or authorized in the Debtor. This Class is Impaired.

Class 7 interests shall be fully extinguished on the Effective Date.

## ARTICLE VI – EXECUTORY CONTRACTS AND UNEXPIRED LEASES

If the Bankruptcy Court has not previously entered an order approving assumption, rejection and/or assignment of leases and executory contracts, then the Confirmation Order shall constitute an order of the Bankruptcy Court approving all such assumptions, assignments, and rejections of executory contracts and unexpired leases as of the Petition Date. All executory contracts are being rejected.

If an executory contract or unexpired lease is assigned, then the other party to the agreement may file a Claim for damages incurred by reason of the assignment within such time as the Bankruptcy Court may allow or be forever barred. Such Claim shall be served upon the Debtor. In the case of rejection of leases of real property, damages are limited under the Bankruptcy Code. Such claims shall be deemed to be Class 6 General Unsecured Claims. The Plan shall constitute adequate and sufficient notice to Persons or Entities which may assert a Claim for damages from the rejection of an executory contract or unexpired lease of the Bar Date for filing a Claim in connection therewith.

To the extent any indemnification obligation of the Debtor (whether pursuant to its charter, by-laws, agreement, or to law) existing as of the Petition Date to any current or former, officer, director or employee of the Debtor constitutes an executory contract, the Debtor shall be deemed to have rejected such contract immediately before the Petition Date pursuant to § 365 of the Bankruptcy Code.

## ARTICLE VII – MEANS OF PLAN IMPLEMENTATION

**A.    Continued Corporate Existence**

The Debtor shall continue to exist only for the purposes of consummating the Plan and closing the Sale.  After substantial consummation of the Plan and closing of the Sale, the Debtor shall be dissolved pursuant to Florida Law.

**B.    Means for Implementing Plan**

1.    **Funds Generated During Chapter 11**

Cash on hand as of Confirmation shall be available for Administrative Expenses.

2.    **Section 1146 Exemption**

Pursuant to Section 1146(a) of the Bankruptcy Code, the issuance, transfer, or exchange of any security under the Plan, or the making or delivery of any instrument of transfer pursuant to, in implementation of, or as contemplated by, the Plan or the re-vesting, transfer or sale of any real or personal property of the Debtor pursuant to, in implementation of, or as contemplated by, the Plan shall not be taxed under any state or local law imposing a stamp tax, transfer tax, or similar tax or fee.

3.    **Employment of Professionals Post-Confirmation**

After the Effective Date, the Liquidating Debtor may retain professionals on such terms as the Liquidating Debtor deems reasonable without Bankruptcy Court approval. Persons who served as professionals to the Debtors prior to the Effective Date may also continue to serve the Debtor.  As set forth herein, a Liquidating Trustee will be retained to liquidate the Debtor's assets.

4.    **Pursuit of Chapter 5 Causes of Action by Trustee-in-Possession**

The TIP has filed a motion (Doc. No. 160) to have authority to pursue Chapter 5 causes of action on behalf of the Debtor. This includes, but is not limited to, the enforcement of turnover obligations under § 542 and § 543, ensuring that property subject to turnover is delivered to the TIP and avoiding transfers under § 544, § 545, § 547, § 548, § 549. Additionally, the TIP has filed an Application to Employ Andrew J. Wit and the Law Firm of Wit Law, PLLC as Special Counsel ("Applicant") for Trustee ("Application") (Doc. No. 169) to pursue claims against bad actors to augment the estate and maximize the recovery of the Debtor's creditors. As explained in more detail in the Application, special counsel has agreed to be compensated on a hybrid contingency fee basis with an hourly billing up to a cap of $75,000.00 and a contingency fee of 40% on any funds recovered or value realized by the estate. To ensure the estate's creditors realize a benefit from Applicant's work, the Applicant has agreed to cap the amount of fees (both hourly or contingency) at 50% of all gross recoveries or value realized on behalf of the estate.

5.    **Sale of the Debtor's Assets**

Notwithstanding that the Debtor shall continue in existence, the Debtor proposes to sell substantially all of the Debtor's assets.  The proceeds from said sale shall be used to pay, first, Allowed Secured Claims, as set forth above; and, if there are funds remaining

after the payment of all Allowed Secured Claims in full, then the balance to the Class 6 General Unsecured Creditors, *pro rata*.

6. **Carveout/Surcharge**

To cover administrative costs, the Plan Proponent proposes a 10% carveout from the auction sale proceeds or, alternatively, will seek a 10% surcharge.

D. **Limitations of Liability**

The Debtor or the Trustee-in-Possession, for the purpose of consummating and implementing the transactions and acts contemplated by this plan, shall have no liability to any entity for any act taken or omitted to be taken in connection with or related to the formulation, preparation, dissemination, implementation, confirmation or consummation of the initial Plan, or any contract, instrument, release or other agreement or document relating to, rising out of or in connection with the Plan, unless the liability of any entity that would otherwise result from any such act or omission was the result of gross negligence, fraud, or willful misconduct.

E. **Termination of service of Subchapter V Trustee**

1. **Consensual Plan:**

When the court confirms a consensual plan under Section 1191(a), the trustee's service terminates upon Substantial Consummation.

2. **Non-Consensual Plan:**

When the court confirms a non-consensual plan under the cramdown provisions of Section 1191(b), the trustee's service shall not terminate until all payments pursuant to the Plan and Section 1194 are made.

3. **Dismissal or Conversion**

Termination of the service of the Subchapter V Trustee shall occur upon dismissal of the case or its conversion to another chapter.

## ARTICLE VIII – PROVISIONS GOVERNING DISTRIBUTION

A. **Cash Payments**

Cash payments made pursuant to the Plan shall be in U.S. funds, by check drawn against a domestic bank, or by wire transfer from a domestic bank.

B. **Delivery of Distributions**

Distributions and deliveries to Holders of Allowed Claims and Interests shall be made at the addresses set forth on the proofs of Claim or Interest filed by such Holders (or at the last known addresses of such holders if no proof of Claim or Interest is filed or if the Debtor or Liquidating Debtor have been notified of a change of address). If any distribution to a Holder is returned as undeliverable, then no further distributions to such Holder shall be made unless and until the Debtor or Liquidating Debtor are notified of the Holder's then-current address, at which time all missed distributions shall be made to such Holder, without interest. All Claims for undeliverable distributions shall be made on or before the first anniversary of the Distribution

Date. After such date, all unclaimed property shall revert to the Debtor or Reorganized Debtor, and the claim of any Holder with respect to such property shall be discharged and forever barred.

### C.     Time Bar to Cash Payments

Checks issued by the Debtor or Liquidating Debtor with respect to Allowed Claims shall be null and void if not cashed within ninety (90) days of the date of issuance thereof. Requests for re-issuance of any checks shall be made directly to the Debtor or Liquidating Debtor by the Holder of the Allowed Claim with respect to which such check originally was issued. Any Claim with respect to such a voided check shall be made on or before the later of the first anniversary of the Distribution Date or ninety (90) days after the date of issuance of such check. After such date, all Claims with respect to void checks shall be discharged and forever barred.

### D.     Transfer of Claim

In the event that the Holder of any Claim shall transfer such Claim on or after the Effective Date, the Holder shall immediately notify the Liquidating Debtor in writing of such transfer and provide sufficient written evidence of the transfer. The Liquidating Debtor shall be entitled to assume that no transfer of any Claim has been made by any Holder unless and until the Liquidating Debtor has received written notice to the contrary. Each transferee of any Claim shall take such Claim subject to the provisions of the Plan and to any request made, waiver, or consent given or other action taken hereunder and, except as otherwise expressly provided in such notice, the Liquidating Debtor shall be entitled to assume conclusively that the transferee named in such notice thereafter shall be vested with all rights and powers of the transferor under the Plan.

## ARTICLE IX – PROCEDURES FOR RESOLVING AND TREATING DISPUTED CLAIMS

### A.     Objection Deadline

Unless extended by the Bankruptcy Court, the Debtor and the Liquidating Debtor shall file any objections to Claims or Interest no later than sixty (60) days after the Confirmation Date.

### B.     Prosecution of Objections

The Liquidating Trustee in Possession shall have authority to file objections, litigate to judgment, settle, or withdraw objections to Disputed Claims or Interests. All professional fees and expenses incurred by the Debtor or Liquidating Debtor from and after the Confirmation Date shall be paid as provided in Article III hereof.

### C.     No Distributions Pending Allowances

No payments or distributions shall be made with respect to any Disputed Claim or Interest unless and until all objections to such Claim or Interest are resolved and such Claim becomes an Allowed Claim or Interest.

### D.     Escrow of Allocated Distributions

The Debtor shall withhold from the property to be distributed under the Plan, and shall place in escrow, amounts sufficient to be distributed on account of Contested Claims. As to any Contested Claim, upon a request for estimation by the Debtor, the Bankruptcy Court shall determine what amount is sufficient to withhold in escrow pending Disallowance of the Claim. The Debtor shall also place in escrow any dividends, payments, or other distributions made on account of, as well as any obligations arising from, the property withheld in escrow pursuant hereto, to the extent such property continues to be withheld in escrow at the time such distributions are made, or such obligations arise.  If practicable, Debtor may invest any cash it has withheld in escrow in a manner that will yield a reasonable net return, taking into account the safety of the investment.

###### E.        Distributions After Allowance

Payments and distributions from escrow to each holder of a Disputed Claim, to the extent that such Claim ultimately becomes an Allowed Claim, shall be made in accordance with the provisions of the Plan governing the Class of Claims to which the respective holder belongs. As soon as practicable after the date that the order or judgment of the Bankruptcy Court allowing such Claim becomes a Final Order, any property in escrow that would have been distributed prior to the date on which a Disputed Claim become an Allowed Claim shall be distributed, together with any dividends, payments, or other distributions made on account of, as well as any obligations arising from, the property from the date such distributions would have been due had such Claim then been an Allowed Claim to the date such distributions are made.

###### F.        Distributions After Disallowance

If any property withheld in escrow remains after all objections to Disputed Claims of a particular Class have been resolved, then such remaining property, to the extent attributable to the Disputed Claims, shall be distributed as soon as practicable in accordance with the provisions of the Plan governing the Class of Claims or Interest to which the Disallowed Claim or Interest belong.

## ARTICLE X– RETENTION OF JURISDICTION

The Bankruptcy Court shall retain jurisdiction to the extent allowed under applicable law until administrative closure of the bankruptcy case, subject to reopening.

## ARTICLE XI – MISCELLANEOUS

###### A.        Modification of the Plan

Pursuant to 11 U. S. C. §1193(a) the Debtor reserves the right to modify the Plan at any time before confirmation, provided that the plan, as modified, meeting the requirement of sections 1122 and 1123 of this title, with the exception of subsection (a)(8) of section 1123. After any modification is filed with the court, the plan as modified becomes the Plan.

###### B.        Confirmation Order and Plan Control

To the extent that the Confirmation Order or the Plan is inconsistent with any agreement entered into between the Debtor and any third party, the Plan controls any such

agreements, and the Confirmation Order (and any other orders of the Bankruptcy Court) shall be construed together with the terms of the Plan.

**C.      Governing Law**

Except to the extent that federal law (including the Bankruptcy Code or the Bankruptcy Rules) is applicable, or where the Plan or the provisions of any contract, instrument, release, indenture or other agreement or document entered into in connection with the Plan provide otherwise, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Florida, without giving effect to the principles of conflicts of law thereof.

**D.      No Admissions**

Nothing herein shall be construed to be an admission of any fact by the Debtor or otherwise binding upon the Debtor in any manner prior to the Effective Date.

**E.      Revocation or Withdrawal of the Plan**

The Debtor reserves the right to revoke or withdraw the Plan prior to the Confirmation Date. If the Debtor revokes or withdraws the Plan, or if confirmation of the Plan does not occur, then the Plan shall be deemed null and void in all respects and nothing contained in the Plan shall be deemed to: (a) constitute a waiver or release of any Claims by or against, or Equity Interests in, the Debtor or any other Person, or (b) prejudice in any manner the rights of the Debtor or any other Person in any further proceedings involving the Debtor.

**F.      Further Assurances**

The Debtor or the Liquidating Debtor (as the case may be) agree, and is/are hereby authorized, to execute and deliver any and all papers, documents, contracts, agreements, and instruments which may be necessary to carry out and implement the terms and conditions of the Plan.

**G.      Notices**

All notices, requests, or other documents in connection with, or required to be served by the Plan shall be in writing and shall be sent by United States Mail, postage prepaid, or by overnight delivery by a recognized courier service to the following:

Counsel for the Debtor:

      Jeffrey S. Ainsworth, Esquire
      1501 East Concord Street
      Orlando, Florida 32803

Trustee in Possession of the Debtor:

      ONE FAT FROG, INCORPORATED
      c/o L. Todd Budgen, Esquire
      P. O. Box 520546
      Longwood, Florida 32752

United States Trustee:

> Office of the United States Trustee
> George C Young Federal Building
> 400 West Washington Street, Suite 1100
> Orlando, Florida 32801

Subchapter V Trustee

> L. Todd Budgen, Esquire
> P. O. Box 520546
> Longwood, Florida 32752

**H.    Estimated Claims**

To the extent any Claim is estimated for any purpose other than for voting, then in no event shall such Claims be Allowed in an amount Greater than the estimated amount.

**I.    Consent to Jurisdiction**

Except to the extent that any agreement, including any loan-related document emanating from this Plan provides for jurisdiction in another forum, upon any default under the Plan, the Debtor, the Reorganized Debtor, for the purpose of consummating and implementing the transactions contemplated by this Plan, consent to the jurisdiction of the Bankruptcy Court, or any successor thereto, and agree that it shall be the preferred forum for all proceedings relating to any such default.

By accepting any distribution or payment under or in connection with the Plan, by filing any Proof of Claim, by voting on the Plan, or by entering an appearance in the Chapter 11 Case, all Creditors, Holders of Equity Interests and other parties in interest, including foreign Creditors, and foreign parties in interest, have consented and shall be deemed to have expressly consented, to the jurisdiction of the Bankruptcy Court for all purposes with respect to any and all matters relating to, arising under or in connection with the Plan or the Chapter 11 Case, including the matters and purposes set forth in Article II of the Plan. The Bankruptcy Court shall maintain jurisdiction to the fullest extent allowed under applicable law over all matters set forth in Article II of the Plan.

**J.    Modification of Payment Terms**

The Liquidating Debtor reserves the right to modify the treatment of any Allowed Claim, as provided in §1123(a)(4) of the Bankruptcy Code, at any time after the Effective Date upon consent of the Holder of such Allowed Claim.

**K.    Compliance with Tax Requirements**

In connection with this Plan, to the extent applicable, the Liquidating Debtor in making distributions under this Plan shall comply with all tax withholding and reporting requirements imposed on it by any governmental unit and all Distribution, pursuant to this Plan, shall be subject to such withholding and reporting requirements. The Liquidating Debtor may withhold the entire Distribution due to any Holder of an Allowed Claim until such time as such

Holder provides to the Liquidating Debtor, the necessary information to comply with any withholding requirements of any governmental unit. Any property so withheld will then be paid by the Liquidating Debtor to the appropriate authority. If the Holder of an Allowed Claim fails to provide the Liquidating Debtor the information necessary to comply with any withholding requirements of any governmental unit within six months after the date of first notification by the Liquidating Debtor to the Holder of the need for such information or for the Cash necessary to comply with any applicable withholding requirements, then the Holder's distribution shall be treated as an undeliverable distribution in accordance with the below. The payment of all taxes on all Distributions shall be the sole responsibility of the distributee.

###### L. <u>Distribution of Unclaimed Property</u>

Except as otherwise provided in this Plan, any property (Cash or otherwise) to be distributed under this Plan, which is unclaimed after six months following the relevant distribution date shall be forfeited and such distribution together with all interest earned thereon shall become an Asset of the Reorganized Debtor.

Dated: August 22, 2024

/s/ Jeffrey S. Ainsworth\
Jeffrey S. Ainsworth, Esquire\
Fla. Bar No.: 060769\
E-mail: *jeff@bransonlaw.com*\
Cole B. Branson, Esquire\
Fla. Bar No.: 1049610\
E-mail: *cole@bransonlaw.com*\
**BransonLaw, PLLC**\
1501 E. Concord Street\
Orlando, Florida 32803\
Telephone (407) 894-6834\
Fax (407) 894-8559\
Attorney for Debtor